### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-cv-62539-WJZ

FREDERICK SIEGMUND, derivatively on
behalf of LINKWELL CORPORATION,

       **Plaintiff,**

v.

XUELIAN BIAN, WEI GUAN, SONG QIANG
CHEN, LING LI, METAMINING, INC.,
METAMINING NEVADA, INC.,
CD INTERNATIONAL ENTERPRISES, INC.,
CHINA DIRECT INVESTMENTS, INC., and
CAPITAL ONE RESOURCE CO., LTD.,

       **Defendants,**

and LINKWELL CORPORATION,

       **Nominal Defendant.**

_____/

### MEMORANDUM OF LAW IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### BY DEFENDANTS CD INTERNATIONAL ENTERPRISES, INC.
### AND CHINA DIRECT INVESTMENTS, INC.

Dated: November 13, 2013
Boca Raton, Florida

Carl F. Schoeppl, Trial Counsel
Florida Bar No. 818518
**SCHOEPPL & BURKE, P.A.**
4651 North Federal Highway
Boca Raton, Florida 33431
Telephone: (561) 394-8301
Facsimile: (561) 394-3121
E-mail: carl@schoepplburke.com
*Counsel for Defendants CD International
Enterprises, Inc., China Direct Investments,
Inc., and Capital One Resource Co., Ltd.*

**TABLE OF CONTENTS**

Page

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    Legal Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.     As a Matter of Law, the Plaintiff Cannot Prevail on His Claim for
               Unjust Enrichment Since Under Florida Law, When an Express
               Contract Exists, An Equitable Claim for Unjust Enrichment Will
               Not Stand. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.     Plaintiff Has Failed to Establish Undisputed Facts Demonstrating
               that Linkwell Did Not Receive What It Bargained for in the
               Share Exchange Agreement or that China Direct Did Not Provide
               the Acquisition Consulting Services for which It Was
               Compensated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.     Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF CITATIONS

**Cases**                                                                                              Page

*Adickes v. S.H. Kress & Co.*,
        398 U.S. 144 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Alvarez v. Royal Caribbean Cruises, Ltd.*,
        905 F.Supp.2d 1334 (S.D.Fla. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Brunswick Corp. v. Vineberg*,
        370 F.2d 605 (5th Cir.1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Casey Enterprises v. Am. Hardware Mutual Ins. Co.*,
        655 F.2d 598 (5th Cir.1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Combs v. King,*
        764 F.2d 818 (11th Cir.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

*Diamond "S" Dev. Corp. v. Mercantile Bank*,
        989 So.2d 696 (Fla. 1st DCA 2008) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Environmental Defense Fund v. Marsh*,
        651 F.2d 983 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Guerrero v. Target Corp.*,
        889 F.Supp.2d 1348 (S.D.Fla. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Goldberg v. Chong*,
        No. 07–20931–CIV,
        2007 WL 2028792 (S.D. Fla. July 11, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Herzog v. Castle Rock Entertainment*,
        193 F.3d 1241 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Lighting Fixture & Electric Supply Co. v. Continental Insurance Co.*,
        420 F.2d 1211 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ocean Communications, Inc. v. Bubeck*,
        956 So.2d 1222 (Fla. 4th DCA 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rushing v. Wells Fargo Bank, N.A.*,
        752 F.Supp.3d1254 (M.D. Fla. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tooltrend, Inc. v. CMT Utensili, SRL,*
        198 F.3d 802 (11th Cir.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Unlimited Resources Inc. v. Deployed Resources, LLC,*
        No. 3:07–cv–961–J–12MCR,
        2009 WL 3805633 (M.D.Fla. Nov. 12, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re US Capital Holdings, LLC,*
        Case No. 12–14517–JKO,
        2013 WL 5297352 (Bankr. S.D. Fla. Aug. 5, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*William Ryan Homes Fla., Inc. v. Whitney Nat'l Bank,*
        No. 8:12–cv–1575–T–33TGW,
        2012 WL 4328769 (M.D. Fla. Sept. 30, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statutes, Rules, and Regulations

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

S.D. Fla. L.R. 56.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, Defendants **CD INTERNATIONAL ENTERPRISES, INC.** ("CD Int'l") and **CHINA DIRECT INVESTMENTS, INC.** ("China Direct") (collectively, the "CD Defendants"), by and through their undersigned counsel, hereby submit this memorandum of law, along with their Statement of Material Facts as to Which There Exists a Genuine Issue to Be Tried and the Declaration of Carl F. Schoeppl, Esq. filed concurrently herewith, in opposition to Plaintiff's Motion for Partial Summary Judgment [DE 87] ("Plaintiff's Motion") seeking summary judgment on Count V for Unjust Enrichment in the "Verified Shareholders Derivative Complaint" [DE 1] ("Complaint") and state as follows:

## I.    Introduction

As a matter of law, the Plaintiff is not entitled to summary judgment on his claim for unjust enrichment against China Direct and its parent company, CD Int'l. Pursuant to the Share Exchange Agreement (PX 8)[1] governing the transaction between Metamining and Linkwell pursuant to which Linkwell acquired 100% of the shares of Metamining Nevada, China Direct received 581,973 shares of Series C convertible preferred Linkwell stock as compensation for acquisition consulting services it provided in connection with the acquisition. The Plaintiff has come forward with no evidence suggesting that those services were not actually provided by China Direct and, as a matter of law, a claim for unjust enrichment cannot stand when there is an express contract governing the payment made.

---

[1] For the convenience of the reader, throughout this Memorandum, to the extent possible, the CD Defendants employ the same abbreviations as used by the Plaintiff. Accordingly, "PX" refers to a "Plaintiff's Exhibit" attached to the Declaration of Charles J. Hecht [DE 85]. Similarly, "Metamining" refers to Defendant Metamining, Inc., "Song" refers to Defendant Song Qiang Chen, and so on.

In seeking partial summary judgment on Count V for Unjust Enrichment, the Plaintiff contends that Song, the Chairman of Metamining, subsequently stated in a Declaration submitted in an unrelated court proceeding in June 2013 — some 15 months *after* the transaction with Linkwell — that Metamining "currently owns the real property and mining rights which Linkwell purportedly purchased from Metamining . . ." and that this "admission by Metamining establishes that Linkwell received *no* value in exchange for 94% of its equity . . ." Plaintiff's Motion [DE 87], at 4-5.  Based on this exceedingly thin factual supposition, the Plaintiff then argues that he is entitled to summary judgment on his claim for unjust enrichment since, Plaintiff reasons, if Metamining currently owns the Iron Horse Project in Nevada, then Metamining Nevada must not have owned the Iron Horse Project when Linkwell acquired it and consequently, Plaintiff argues that Linkwell "received *no* value in exchange for 94% of its equity . . ." and both Metamining and China Direct were "unjustly enriched" by their receipt of Linkwell shares.  Plaintiff's Motion [DE 87], at 5.  Plaintiff submits that Song's "admission eliminates any genuine issue for trial" and establishes that Plaintiff is entitled to partial summary judgment on his unjust enrichment claim.  *Id.*

The CD Defendants submit that the Plaintiff's claim for unjust enrichment against China Direct and its parent, CD Int'l, fails as a matter of law  because, as the Plaintiff acknowledges in both his Motion and in his Complaint, Linkwell's payment of shares to China Direct was pursuant to an express contract.  Under Florida law, it is well settled that an equitable claim for unjust enrichment cannot stand when there is an express contract providing for payment of the alleged "unjust enrichment."

Plaintiff's Motion also fails since the Plaintiff has failed to set forth — let alone establish as uncontroverted — *any* material facts whatsoever that would indicate that China Direct did not

2

provide the consulting and acquisition services for which it received shares of Linkwell stock. Given

the absence of legal and factual support, the present Motion by the Plaintiff must be viewed for what

it is — as one more entirely meritless exercise intended to unjustifiably increase litigation costs for

the Defendants — and it should be denied forthwith.

## II.     Standard of Review

Summary judgment is authorized only when "there is no genuine issue as to any material

fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

burden falls on the moving party to demonstrate that there are no material facts in dispute. *See*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In *Herzog v. Castle Rock Entertainment,*

193 F.3d 1241, 1246-47 (11th Cir. 1999) (*per curiam*), the Eleventh Circuit approved the following

explanation of the applicable standards:

> In assessing whether the movant has met this burden, the courts should view the
> evidence and all factual inferences therefrom in the light most favorable to the party
> opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; *Environmental
> Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). All reasonable doubts
> about the facts should be resolved in favor of the non-movant. *Casey Enterprises v.
> Am. Hardware Mutual Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981). If the record
> presents factual issues, the court must not decide them; it must deny the motion and
> proceed to trial. *Marsh*, 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v.
> Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may
> be inappropriate even where the parties agree on the basic facts, but disagree about
> the inferences that should be drawn from these facts. *Id.* at 1213. If reasonable minds
> might differ on the inferences arising from undisputed facts, then the court should
> deny summary judgment. . . .
>
> Moreover, the party opposing a motion for summary judgment need not respond to
> it with any affidavits or other evidence unless and until the movant has properly
> supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. at
> 1609–10; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts
> underlying all the relevant legal questions raised by the pleadings or otherwise are not
> in dispute, or else summary judgment will be denied notwithstanding that the non-
> moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*,
> 370 F.2d 605, 611–12 (5th Cir.1967). . . .

In addition to showing the absence of any genuine issue as to a material fact, the moving party must also demonstrate that it is entitled to judgment as a matter of law. *Combs v. King,* 764 F.2d 818, 827 (11th Cir.1985) ("The party seeking summary judgment bears the exacting burden of showing both that there is no actual dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."). Accordingly, the present Motion fails since the Plaintiff has failed to demonstrate both the absence of all material factual disputes and that he is entitled to summary judgment as a matter of law.

III.    **Legal Argument**

A.    **As a Matter of Law, the Plaintiff Cannot Prevail on His Claim for Unjust Enrichment Since Under Florida Law, When an Express Contract Exists, An Equitable Claim for Unjust Enrichment Will Not Stand**

In his Complaint, the Plaintiff alleges that "[u]nder the terms of their consulting and management agreement(s), China Direct received Linkwell common stock and common stock warrants as compensation for the services rendered." Complaint, ¶ 35. The Plaintiff also alleges that Metamining received payment of Linkwell shares pursuant to an express contract with Linkwell. *See, e.g.*, Complaint, ¶ 64 ("On April 2, 2012, Linkwell announced in a press release filed a Form 8-K that the Company had entered into a definitive share exchange agreement (the 'Share Exchange Agreement') with the Metamining to acquire Metamining Nevada as a wholly owned subsidiary, in exchange for 9,000,000 shares of newly issued Series C convertible preferred stock and 3,000,000 warrants to purchase common stock.").

In support of the Plaintiff's Motion, the Plaintiff has himself submitted the Share Exchange Agreement pursuant to which Linkwell acquired Metamining Nevada and agreed to transfer 9,000,000 of its Series C convertible preferred shares to Metamining in exchange for 100%

ownership of Metamining Nevada and 581,973 of those shares to China Direct as compensation for services rendered in connection with the acquisition. Since there is an *express* contract governing the transaction, under Florida law, there can be no basis for an equitable claim of unjust enrichment based on an *implied* contract. *See, e.g., Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F.Supp.2d 1334, 1341 (S.D.Fla. 2012) (dismissing unjust enrichment claim, finding that "unjust enrichment is an equitable remedy which necessarily fails upon a showing that an express contract exists."); *William Ryan Homes Fla., Inc. v. Whitney Nat'l Bank*, No. 8:12–cv–1575–T–33TGW, 2012 WL 4328769, at *5 (M.D. Fla. Sept. 30, 2012) (finding that when parties did not dispute the existence of a valid express contract, the plaintiff's claim for unjust enrichment would be dismissed with prejudice pursuant to Florida law); *Rushing v. Wells Fargo Bank, N.A.*, 752 F.Supp.3d1254, 1265 (M.D. Fla. 2010) (dismissing unjust enrichment claim because "[a] claim for the equitable remedy of unjust enrichment may not be brought if the parties have a valid contract covering the same subject matter as the unjust enrichment claim"); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. 1ˢᵗ DCA 2008) (finding that "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter" and reversing judgment in favor of plaintiff on unjust enrichment claim); *Ocean Communications, Inc. v. Bubeck,* 956 So.2d 1222, 1227 (Fla. 4ᵗʰ DCA 2007) (plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists). *See also Unlimited Resources Inc. v. Deployed Resources, LLC*, No. 3:07–cv–961–J–12MCR, 2009 WL 3805633, at *2 (M.D.Fla. Nov. 12, 2009) (denying summary judgment to plaintiff on unjust enrichment claim because there were questions of fact as to whether express contract existed since "[u]njust enrichment (quasi-contract or contract implied as a matter

5

of law) is an equitable remedy not available if an express contract exists concerning the same subject matter."), *citing*, *inter alia*, *Tooltrend, Inc. v. CMT Utensili, SRL,* 198 F.3d 802, 805–807 (11th Cir.1999).[2]

As legal authority, Plaintiff cites to *Goldberg v. Chong*, No. 07–20931–CIV, 2007 WL 2028792 (S.D. Fla. July 11, 2007) in which the Court did grant summary judgment to the plaintiff on an unjust enrichment claim. But the facts of *Goldberg* are inapposite and its holding of little relevance to the instant Motion. In *Goldberg*, a federal receiver appointed at the request of the SEC sought to recover $5 million transferred by a receivership entity, TEGFI, to an employee, Lyn Chong. Chong, a high school dropout, began working for John Utsick and his companies, including TEGFI, in 2002 at an hourly wage of $10, earning an annual salary of about $23,400. *Id.* at *1. According to Chong, Utsick promised "large compensation" if she stayed loyal and worked for the company. *Id.*

Later, Chong acted as Utsick's personal assistant and by 2005, had almost doubled her initial salary to $45,500. 2007 WL 2028792, at *2. In the summer of 2005, after an evaluation, Chong raised the subject of the promised "large compensation" and Utsick asked her what she thought would be fair. *Id.* Chong suggested $5 million and, according to her, Utsick said that amount was fine. *Id.* Chong memorialized the figure in a Compensation Agreement which provided that Universal, a company controlled by Chong, was to receive $5 million as compensation for prior

---

[2] When the Plaintiff has *any* available legal remedy, an equitable claim for unjust enrichment will not stand. *See, e.g., Guerrero v. Target Corp.*, 889 F.Supp.2d 1348, 1356-57 (S.D.Fla. 2012) (dismissing unjust enrichment claim with prejudice when plaintiff may have adequate legal remedy under FDUTPA for claim that retailer sold "honey" that did not meet Florida legal requirement for honey even though she had not adequately plead her FDUTPA claim). Notably, the Plaintiff in the present litigation does not allege that there is no adequate remedy at law.

services rendered. *Id.* According to Chong, she and Utsick executed the Compensation Agreement, along with three other witnesses. *Id.* Chong then prepared a $5 million wire transfer and obtained the funds. *Id.* Utsick disavowed any knowledge of either the Compensation Agreement or the wire transfer and disputed the authenticity of his signature on those documents. *Id.* at n.2.

The Court first found that the Receiver was entitled to summary judgment on his fraudulent transfer claim because Chong did not provide "reasonably equivalent value" for the $5 million transfer since she had already been paid a salary for her past services rendered and had provided nothing additional in exchange for the $5 million. 2007 WL 2028792, at *6. In addressing the Receiver's unjust enrichment claim, the Court similarly found that no value had been provided by Chong for the $5 million payment and it would be inequitable to permit her to retain it, particularly since $5 million was more that all of Utsick's employees had earned in 2005 combined and was over 100 times greater than Chong's highest annual salary. *Id.*, at *8. While the Defendant argued that the Receiver could not proceed with an equitable claim when a legal remedy was available to him, the Court rejected the argument because the Receiver did not have a breach of contract claim. *Id.* at 9. The Court, in weighing the equities, also considered that numerous investors had invested "their retirement life savings" with Utsick. *Id*. at *9.[3]

*Goldberg* has little relevance to the facts *sub judice*. China Direct received Linkwell shares pursuant to the terms of the Share Exchange Agreement — an agreement that no party has

---

[3] "Utsick, at the helm of businesses that were losing money by the millions and owed millions of dollars to investors, many of whom invested their retirement life savings, decided to give a $5 million transfer to his personal assistant, Chong. It is undisputed that Chong provided nothing in exchange for this windfall to either Utsick, TEGFI, Worldwide or any other Receivership entity. The Compensation Agreement states that the $5 million transfer was for 'past services' alone. . . ." *Goldberg*, 2007 WL 2028792, at *9.

disavowed or challenged and which the Plaintiff himself has submitted as the operative agreement governing the Metamining Nevada acquisition by Linkwell — and those shares were not compensation for services rendered in the past but for services rendered in connection with the very acquisition embodied in the Share Exchange Agreement. *See, e.g., In re US Capital Holdings, LLC*, Case No. 12–14517–JKO, 2013 WL 5297352, at *6-*8 & n.12 (Bankr. S.D. Fla. Aug. 5, 2013) (granting summary judgment against pleader and finding unjust enrichment claim "unsustainable" when party received that to which it was legally entitled under an express contract) (citing numerous cases).   If Linkwell did not receive what it bargained for in the Share Exchange Agreement, it would have a legal remedy for breach of contract available to it and the Plaintiff cannot, as a matter of law, ignore the parties' contractual relationship in an effort to assert an equitable claim for unjust enrichment.

Since the Plaintiff himself contends that there was an express contract providing for the transfer of Linkwell preferred shares to Metamining and China Direct, and has himself submitted the governing contract to the Court, the Plaintiff cannot prevail on a claim of unjust enrichment as a matter of law.   Consequently, the Court need not expend further resources to examine whether there are genuine disputes as to material facts and should summarily deny the Plaintiff's Motion.

**B.      Plaintiff Has Failed to Establish Undisputed Facts Demonstrating that Linkwell Did Not Receive What It Bargained for in the Share Exchange Agreement or that China Direct Did Not Provide the Acquisition Consulting Services for which It Was Compensated**

The Plaintiff has jumped to the entirely unsupported conclusion that the Iron Horse Project assets "which were supposed to be transferred to Linkwell when it acquired Metamining Nevada from Metamining are still owned by Metamining, while Linkwell has an $11.25 million obligation under the Notes to pay for those assets."  Plaintiff's Motion, DE 87, at 9.

As support, the Plaintiff points to a statement made in a Declaration dated June 25, 2013, submitted by Song, the Chairman of Metamining, in unrelated litigation in which Song states that Metamining "presently holds" a number of assets, including the Iron Horse Project in Nevada.  On the basis of that statement — and despite numerous public statements by Linkwell confirming that Metamining Nevada does indeed own the Iron Horse Project —  Plaintiff has leapt to the conclusion that Metamining Nevada did not own the Iron Horse Project at the time of the Transaction and "Linkwell received *no* value in exchange for 94% of its equity . . ." (*see* Plaintiff's Motion  [DE 87] at 5; Plaintiff's Statement of Material Facts [DE 88] at ¶ 38).

The CD Defendants dispute a number of the Plaintiff's factual assertions[4] including Plaintiff's characterization that Metamining's Chairman, Song, "admitted" that the Iron Horse Project in Nevada is owned by Metamining and was not acquired by Linkwell as part of the Metamining Nevada acquisition.  In his Declaration, submitted by the Plaintiff as PX 16, Song merely *states*, among other things:

> Metamining presently holds assets of significant value.  These assets are in the form of real property, mining rights and infrastructure, and equipment of three mining operations: the Coal Creek (Spiro) Mine in Oklahoma, the Iron Horse Project in Nevada, and Barnett Energy, LLC, which holds mining rights in Virginia. . . .

Song Declaration, at ¶ 13 (PX 16) (emphasis added).  While Song is quite capable of explaining his own statement in his Declaration indicating that Metamining "presently holds" the Iron Horse Project, an objective reader could conclude that since Metamining owns a controlling block of Linkwell shares and Linkwell owns 100% of the shares of Metamining Nevada which in turn owns

---

[4] *See* Statement of Material Facts as to Which There Exists a Genuine Issue to Be Tried Submitted by Defendants CD International Enterprises, Inc. and China Direct Investments, Inc. ("CD Statement of Facts") submitted herewith.

the Iron Horse Project, Song was simply referring to Metamining's *indirect* ownership of the Iron

Horse Project.

Furthermore, Linkwell has repeatedly stated, *subsequent* to the acquisition of Metamining

Nevada, that Metamining Nevada owns the Iron Horse Project.  Linkwell stated in the Form 10-Q

(PX 15), Note 11, that the Sellers who originally sold that asset to Metamining had "provided written

confirmation to Metamining Nevada on May 8, 2012 stating that Metamining Nevada's ownership

of the real property and mineral rights was in good standing."   Again, in a Press Release attached

as an exhibit to Linkwell's Form 8-K dated January 15, 2013 which was filed with the SEC on

February 7, 2013, Linkwell stated that "Metamining Nevada owns rights to approximately 4,500

acres of mining properties in Nevada." CDX 1.  Thus, in the months following its acquisition of

Metamining Nevada's shares, Linkwell has repeatedly indicated that Metamining Nevada does

indeed own the Iron Horse Project.

Since Linkwell acquired its shares, Metamining Nevada has engaged in transactions that have

increased its assets. CDX 1, at Item 1.01.  In addition, it appears that Linkwell has been working to

restructure the debt resulting from the acquisition of Metamining Nevada, with the assistance of

Metamining.  CD Statement of Facts, ¶ 36.[5]  Considering that Metamining owns a significant stake

in Linkwell, it obviously has an interest in promoting Metamining Nevada's success.

With regard to the CD Defendants, there is no basis for any assertion by the Plaintiff that

China Direct was "unjustly enriched" by the payment of its fees for consulting and other services

---

[5]  It also appears that Linkwell is making attempts to obtain further financing to develop the
Iron Horse Project.  CD Statement of Facts, ¶ 36.  Those efforts have undoubtedly been hindered by
the present litigation, purportedly brought on Linkwell's behalf, to the detriment of all of its
shareholders.

rendered in connection with Linkwell's acquisition of Metamining Nevada.  The Plaintiff has not

offered a scintilla of evidence suggesting that China Direct did not provide the services for which

it was recompensed.   Furthermore, both Linkwell and China Direct have affirmatively stated that

the 581,973 Linkwell Series C Preferred Shares transferred to China Direct were compensation for

consulting acquisition services rendered in connection with Linkwell's acquisition of Metamining

Nevada.   CD Statement of Facts, ¶ 22.   As stated by CD Int'l in its SEC filings, China Direct

usually accepts payment of its fees in stock and that stock is usually restricted for a period of time

rendering it unmarketable upon receipt. CD Statement of Facts, ¶ 10. So it was with regard to the

Linkwell shares received by China Direct which were restricted, unmarketable shares when received.

*Id*. at ¶ 22.  Obviously, it is to China Direct's benefit if both of Linkwell's operations — its

disinfectant business as well as Metamining Nevada — prosper such that Linkwell's share price

increases during the requisite holding period.

The  Plaintiff has failed to show — let alone prove beyond dispute — that Linkwell did not

receive what it bargained for when it acquired 100% of Metamining Nevada's shares and, at last

report by Linkwell, Metamining Nevada continues to own the Iron Horse Project in Nevada.  CD

Statement of Facts at ¶ 3, 39.  With regard to the CD Defendants, the Plaintiff has offered no

evidence whatsoever to suggest that China Direct did not perform the acquisition consulting services

for which it was compensated by its receipt of 581,973 Series C preferred Linkwell shares pursuant

to the terms of the Share Exchange Agreement.   Consequently, Plaintiff has failed to carry "the

exacting burden of showing both that there is no actual dispute as to any material fact . . ." and that

he "is entitled to judgment as a matter of law," and the Motion for Partial Summary Judgment must

be denied.  *See, e.g.*, *Combs v. King,* 764 F.2d 818, 827 (11th Cir.1985).

11

## IV.    Conclusion

For the foregoing reasons, the CD Defendants respectfully request that this Court enter an

Order: (A) denying the Plaintiff's Motion for Partial Summary Judgment; (B) finding that this

proceeding was commenced without reasonable cause and ordering the Plaintiff, pursuant to Section

607.07401(5) of the Florida Statutes, to pay the reasonable expenses, including reasonable attorney's

fees, incurred by the CD Defendants in defending this proceeding; and (C)  awarding such other and

further relief as this Court deems just and appropriate.

Dated: November 13, 2013                                    Respectfully submitted,
Boca Raton, Florida

                                                            **s/ Carl F. Schoeppl, Esq.**
                                                            Carl F. Schoeppl, Trial Counsel
                                                            Florida Bar No. 818518
                                                            **SCHOEPPL & BURKE, P.A.**
                                                            4651 North Federal Highway
                                                            Boca Raton, Florida 33431
                                                            Telephone: (561) 394-8301
                                                            Facsimile: (561) 394-3121
                                                            E-mail: carl@schoepplburke.com
                                                            *Counsel for Defendants CD International*
                                                            *Enterprises, Inc., China Direct Investments,*
                                                            *Inc., and Capital One Resource Co., Ltd.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2013, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to

all counsel of record as indicated below.

s/ Carl F. Schoeppl, Esq.
Carl F. Schoeppl. Esq.
*Counsel for Defendants CD International*
*Enterprises, Inc., China Direct Investments,*
*Inc., and Capital One Resource Co., Ltd.*

| Party | Method of Service | Name, Address, Telephone, and Facsimile of Party's Counsel |
|---|---|---|
| Frederick Siegmund, *Plaintiff* | CM.ECF System | Charles J. Hecht, Esq.<br>Malcolm T. Brown, Esq.<br>**WOLF HALDENSTEIN ADLER FREEMAN & HERZ, LLP**<br>270 Madison Avenue<br>New York, NY 10016<br>Telephone: (212) 545-4682<br>Facsimile: (212) 490-3263<br>Email: hecht@whafh.com<br>brown@whafh.com |
| Frederick Siegmund, *Plaintiff* | CM.ECF System | Lisa K. Bennett, Esq.<br>**FISCHLER & FRIEDMAN, P.A.**<br>1000 South Andrews Avenue<br>Fort Lauderdale, FL 33316<br>Telephone: (954) 763-5778<br>Facsimile: (954)763-3238<br>Email: lisabs222@aol.com |
| Song Qiang Chen, Ling Li, Metamining, Inc., and Metamining Nevada, Inc., *Defendants* | CM.ECF System | Ryon M. McCabe, Esq.<br>**MCCABE RABIN, P.A.**<br>1601 Forum Place, Suite 505<br>West Palm Beach, Florida 33401-8103<br>Telephone: (561) 659-7878<br>Facsimile: (561) 242-4848<br>E-mail: rmccabe@mccaberabin.com |

F:\China Direct - Siegmund\Pleadings\Memo in Opp to SJ 11 13 13FINAL.wpd