## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-62539-CIV-GAYLES/TURNOFF

FREDERICK SIEGMUND, *derivatively*
*on behalf of* LINKWELL CORPORATION,
             Plaintiff,

          v.

XUELIAN BIAN, et al.,
                    Defendants,

        and

LINKWELL CORPORATION,
               Nominal Defendant.
_____/

### ORDER

**THIS CAUSE** comes before the Court on Defendants Xuelian Bian and Wei Guan's

Motion to Dismiss for Lack of Standing [ECF No. 325], Plaintiff Frederick Siegmund's Motion to

Strike the Defendants' Motion [ECF No. 332], and Defendant Ecolab, Inc.'s ("Ecolab") Motion

to Sever and Transfer [ECF No. 207]. The Court has considered the parties' briefs, the record, and

the applicable law and is otherwise fully advised in the premises. For the reasons that follow, this

action shall be dismissed as to all Defendants for lack of standing.

## I.      BACKGROUND

The Plaintiff, Frederick Siegmund, brought this shareholder derivative suit on behalf of

Nominal Defendant Linkwell Corporation ("Linkwell") to contest a reverse-merger transaction

that occurred in early 2012. Linkwell is a publicly traded Florida corporation with a principal

place of business in China. Until the end of 2011, Linkwell was in the business of developing,

manufacturing, selling, and distributing disinfectant healthcare products to the medical industry

in China through its direct subsidiaries. According to the allegations in the Third Amended

Shareholders Derivative Complaint (the "Third Amended Complaint," the operative complaint in this action), the board of Linkwell caused Linkwell to acquire as a wholly owned subsidiary Defendant Metamining Nevada, Inc. ("Metamining Nevada")—a private shell company with no assets, operations, or meaningful prospects, but with over $11 million in financial obligations— in exchange for the transfer to Defendant Metamining, Inc. ("Metamining")—a privately held California mining development corporation—of over 9,000,000 shares of convertible preferred stock and 3,000,000 common stock warrants (approximately 88% of Linkwell's equity). Sieg-mund alleges that Linkwell's board also caused Linkwell to issue approximately 600,000 shares of convertible preferred stock and 10,000,000 shares of common stock (approximately 6% of Linkwell's equity) to Defendants China Direct Investments, Inc. ("China Direct"), and Capital One Resource Co., Ltd. ("Capital One")—wholly owned subsidiaries of Defendant CD International Enterprises, Inc., a Florida corporation that produces and distributes industrial commodities in China. China Direct and Capital One were both engaged by Linkwell, Metamining, and Metamining Nevada as "consultants" in connection with the transaction. The transaction was allegedly consummated to pay for certain unconfirmed real property and mining rights in Nevada.

Siegmund contends that Linkwell entered into this transaction for the sole purpose of benefitting its directors at the expense of the company and its shareholders. Siegmund also alleges that Linkwell's board of directors (along with the other Defendants in this action[1]) were aware of

---

[1]   Defendants Xuelian and Wei, whose motion is presently before the Court, "became officers and directors of Linkwell in 2005. Xuelian was CEO, President, and Chairman of the Board of Directors, and Wei was Vice President and a member of the Board of Directors. On November 17, 2014, in response to [a] . . . discovery motion filed by the Plaintiff, Xuelian and Wei filed sworn declarations in which each testified that he resigned from his position as director and officer, effective July 18, 2014. [ECF Nos. 219-1 & 219-2]. They also provided Linkwell's corporate resolutions accepting those resignations." *Siegmund v. Xuelian*, No. 12-62539, 2016 WL 1359595, at *1 (S.D. Fla. Apr. 6, 2016).

The other Defendants not already named are Song Qiang Chen, Chairman of Metamining and Metamining Nevada, who became a Linkwell board member just prior to the approval of the complained-of transaction; Ling Li, President and co-founder of Metamining and Metamining Nevada, who also became a Linkwell board member just prior to the approval of the complained-of transaction; and Ecolab, Inc., whose relationship to this case is described more fully *infra*, Section I.B.

the purpose of the transaction and were also aware that Metamining was in no position to adequately compensate Linkwell for its shares.

Siegmund asserts, on behalf of Linkwell, derivative claims against the Defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive fraud, civil conspiracy, unjust enrichment, imposition of a constructive trust, and attorneys' fees. After the initial Complaint was filed, the merger between Linkwell and Metamining was unwound.

### A.   *Allegations Pertinent to Xuelian and Wei's Motion*

Siegmund filed and served the Third Amended Complaint on August 7, 2014. Five days later, Linkwell entered into a merger transaction with Leading World Corporation ("LWC"). On August 19, 2014, Jiang Zhu, the CEO of Linkwell, sent a letter to all shareholders of Linkwell describing the terms of the merger. Specifically, LWC would be merged into Linkwell, and Linkwell would survive the merger as a wholly owned subsidiary of Leading First Capital Limited, a British Virgin Islands corporation and the parent company of LWC. If consummated, each share of Linkwell stock would be converted into the right to receive $0.88 in cash.[2] The letter invited shareholders to a special meeting for the purposes of voting on the merger, to be held on September 19, 2014, in Shanghai, China, and encouraged them to vote in favor of the merger. *See* Diner Decl. Ex. A. The same was explained in a Notice of Special Meeting of Shareholders sent on the same day. *See id.* Ex. B.

Linkwell's board of directors also mailed a Proxy Statement to shareholders. The Proxy Statement outlined that upon completion of the merger with LWC all shares of Linkwell stock would be cancelled, shareholders would receive a cash payment for the total amount of their shares, and "holders of [Linkwell] common stock will no longer have any interest in, and will no

---

[2]   The letter stated that certain shares would not be subject to this cash conversion: shares owned by Linkwell, its subsidiaries, Leading First Capital, and LWC, as well as shares owned by any shareholders who had perfected and had not withdrawn a demand for appraisal rights under the Florida Business Corporation Act.

longer be shareholders of, [Linkwell]." *Id.* Ex. C at 2. Linkwell's board of directors recommended that the shareholders vote in favor of the merger because of Linkwell's precarious financial situation. They described Linkwell's operating loss in 2014 and negative cash-flow position due to an increasing inability to recover accounts receivable or to obtain bank loans in China. The board also recommended that the shareholders vote for the merger because the per-share consideration they would receive represented nearly a 500% premium over Linkwell's closing prices on June 27, 2014 (the last trading day before the date of the merger agreement), and an approximately 650% premium over Linkwell's 120–trading day volume weighted average price as of August 12, 2014. Approval of the merger required the affirmative vote of the holders of at least a majority of the shares of Linkwell common stock present and entitled to vote at the special meeting, whether or not a quorum was present.

The merger was approved at the special meeting held on September 19, 2014. Defendants Xuelian and Wei were among those in attendance and voted their Linkwell shares in favor of the merger. Siegmund contends that shareholder approval would not have been possible without Xuelian and Wei voting their shares.[3] That same day, Linkwell filed Articles of Merger with the Florida Department of State, which reflect that a majority of Linkwell's shares voted to approve the merger with LWC and the merger was consummated. [ECF No. 216-1]. Per the Plan of Merger attached to the articles, on the effective date of the merger (*i.e.*, September 19, 2014) each issued and outstanding share of Linkwell common stock was cancelled and each holder of Linkwell shares had the right to receive the merger consideration of $0.88 per share. Siegmund alleges that the Articles of Merger did not become publicly available until October 26, 2014. He claims that he had no knowledge of the potential transaction before that date, and that he was never

---

[3] According to the attendance sheet for the special meeting, Xuelian and Wei beneficially owned 233,618 of the total 345,508 Linkwell shares voted to approve the merger.

4

provided with notice of the special meeting, as required by Fla. Stat. § 607.0705, or the Plan of Merger, the Proxy Statement, or a copy of the merger agreement.

Defendants Xuelian and Wei filed a motion to dismiss for lack of standing on October 8, 2015. They attached to that motion Siegmund's stock brokerage account statements, which Siegmund had previously produced in response to a discovery request. These account statements reflect that all of Siegmund's Linkwell shares were sold on November 6, 2014, as a result of the LWC merger, and that he received the $0.88 per share merger consideration in exchange (500 shares at $0.88 per share, for a total payment of $440.00). *See* Diner Decl. Ex. D. Xuelian and Wei assert that, as a result of the merger, Siegmund is no longer a Linkwell shareholder, and thus, he no longer has standing to maintain this derivative action. Siegmund opposes the motion.

Prior to filing his response, Siegmund filed a motion to strike, raising several arguments. First, he claims that Xuelian and Wei's motion to dismiss should be stricken because it was filed more than a year after they filed their answer. Second, he argues that the motion is premature because it relies on factual matter outside the Third Amended Complaint. Xuelian and Wei oppose Siegmund's motion.

### B.   *Allegations Pertinent to Ecolab's Motion*

Siegmund alleges that on February 15, 2008, Defendant Ecolab—a Delaware corporation that, *inter alia*, develops and markets cleaning and sanitizing products to a variety of sectors— purchased a 10% stake in Linkwell Tech Group., Inc. ("Linkwell Tech"), a Linkwell subsidiary. On May 30, 2008, Ecolab, Linkwell, and Linkwell Tech entered into an agreement whereby Ecolab acquired 888,889 shares of Linkwell Tech's common stock (the "Stockholders Agreement") [ECF No. 213-2]. Ecolab obtained a "put" option and a "call" option under the Stockholders Agreement. The put option required Linkwell to, upon the occurrence of certain agreed-upon conditions, repurchase all of the Linkwell Tech common stock that had been acquired by

Ecolab. Stockholders Agreement § 4.1. Conversely, if Linkwell underwent a change of control, the call option required Linkwell to sell all of the shares it owned in any or all of its subsidiaries, including Linkwell Tech, to prevent the dilution of Ecolab's interest. *Id.* § 4.2. The Stockholders Agreement contained a forum selection clause, which provides, in part:

> Any action or proceeding arising out of or relating to this Agreement or the trans-
> actions contemplated by this Agreement must be brought in the courts of the State
> of Minnesota, County of Ramsey, or, if it has or can acquire jurisdiction, in the
> United States District Court for the District of Minnesota.

*Id.* § 13.12.

On March 6, 2012, Linkwell underwent a "change of control," *i.e.*, the alleged reverse-merger transaction with Metamining. Rather than exercise its call option, on April 22, 2013, Ecolab entered into an agreement with Linkwell (the "Redemption Agreement") whereby Linkwell agreed to repurchase all of the Linkwell Tech stock originally sold to Ecolab [ECF No. 150-3]. The Redemption Agreement also required any action or proceeding arising out of or relat-ing to the agreement be brought in Minnesota state or federal court. Redemption Agreement § 19.

Siegmund's claims against Ecolab arise from the contention that Ecolab aided and abetted Linkwell's board members in breaching their fiduciary duties to the corporation by secretly acquiring the equity of Linkwell's subsidiary disinfectant businesses: Linkwell Tech; Shanghai Likang Disinfectant High Tech Co., Ltd.; and Shanghai Likang Biological Hi-Tech Co., Ltd. (the "Linkwell Subsidiaries"). According to Siegmund, Ecolab was also aware of all material terms of the reverse merger with Metamining, including the requirement that Linkwell needed to be a clean shell company with no assets in order for the reverse merger to be consummated.[4] Ecolab purportedly purchased the Linkwell Subsidiaries from Linkwell in order to pave the way for the merger. Siegmund further alleges that Ecolab's SEC filings reflected the acquisition of the

---

[4]   The rationale for having Linkwell exist as a clean public shell was that once Metamining acquired control of Linkwell, Metamining (a private entity) would also have access to public funds because of Linkwell's designation as a public company.

Linkwell Subsidiaries. Given that the sale of the Linkwell Subsidiaries would also have to be disclosed to Linkwell's shareholders, Siegmund claims that Ecolab was complicit in the transaction and fully intended to assist Linkwell's directors in breaching their fiduciary duties. Ecolab disputes these allegations, arguing that Siegmund incorrectly arrived at the conclusion that Ecolab purchased the Linkwell Subsidiaries based on 2012 Ecolab SEC filings that listed those entities as subsidiaries of *Ecolab*. Ecolab states that it amended these filings in 2014 to clarify that the Linkwell Subsidiaries were inadvertently included on the list of Ecolab subsidiaries.[5]

Of the seven counts in the Third Amended Complaint, Siegmund alleges four against Ecolab: aiding and abetting breach of fiduciary duty, unjust enrichment, imposition of a constructive trust, and attorneys' fees. On October 1, 2014, Ecolab filed a motion to sever and transfer, requesting that this Court enforce the forum selection clause in the Stockholders Agreement, sever the claims against it from this action, and transfer those claims to the U.S. District Court for the District of Minnesota. Siegmund opposes the motion.

## II.   DISCUSSION

### A.   *Standing Motions Generally*

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). A motion to dismiss for lack of subject matter jurisdiction may present either a facial or a factual challenge to the complaint. *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis for subject matter jurisdiction." *Id.* at 1251. Furthermore, "the court must consider the allegations in

---

[5]   While the list of its subsidiaries was updated, Siegmund alleges that Ecolab has not updated its financial statements to exclude any gains that may have been a result of its purported acquisition of the Linkwell Subsidiaries.

the plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).[6] By contrast, a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations," *Lawrence*, 919 F.2d at 1529 (citation and internal quotation marks omitted), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction, *see OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

### B.    *The Plaintiff's Motion to Strike Fails*

In Siegmund's motion to strike, he argues that Xuelian and Wei's motion to dismiss is improper, untimely, and should be stricken because the parties are in the midst of discovery and the Defendants filed their answer more than a year ago. These arguments are nonstarters.

As an initial matter, Siegmund's own motion is not proper. Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a ***pleading*** an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). "[N]umerous courts in the Eleventh Circuit, and elsewhere, have held that a motion to strike filings that are not pleadings (as defined by Rule 7(a)) is improper." *Keira v. Kerry*, No. 1360990, 2013 WL 5416900, at *1 (S.D. Fla. Sept. 26, 2013); *see also Weiss v. PPG Indus., Inc.*, 148 F.R.D. 289, 292 (M.D. Fla. 1993) ("A motion is not a pleading, and thus a motion to strike a ***motion*** is not proper under [Rule] 12(f)." (emphasis in original)). Xuelian and Wei's motion is not a pleading, so it is not capable of being stricken under this Rule.

---

[6]   The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Beyond this procedural deficiency, Siegmund's motion is substantively deficient, as well. "[A] party may move to dismiss for lack of subject-matter jurisdiction at any time. And if 'the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'" *Douglas v. United States*, 814 F.3d 1268, 1280-81 (11th Cir. 2016) (quoting Fed. R. Civ. P. 12(h)(3)) (citations omitted). While questions of standing should be raised at the earliest possible opportunity, *see Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999), subject matter jurisdiction cannot be conferred or waived "by failing to challenge jurisdiction early in the proceedings," *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Xuelian and Wei's motion to dismiss for lack of subject matter jurisdiction would be timely filed whenever they chose to file it.

Siegmund also argues that the Xuelian and Wei's motion is premature because their request for dismissal is based on facts outside the four corners of the Third Amended Complaint. If these Defendants were launching a facial attack on the Court's subject matter jurisdiction, this argument could potentially have merit. However, Xuelian and Wei asserted in their briefing that this is a factual attack on subject matter jurisdiction. It is also obvious to the Court, given the wealth of outside factual material attached to their motion, that these Defendants have indeed asserted a ***factual*** attack on this Court's subject matter jurisdiction. So the Court properly considers matters outside the pleadings. For these several reasons, Siegmund's motion to strike shall be denied.

**C.**    ***The Plaintiff Lacks Standing to Maintain This Derivative Action***

On the issue of derivative standing, "[u]nder both federal and Florida law, a plaintiff bringing a shareholder derivative suit must be a shareholder when the action as brought and throughout the course of the litigation." *Hantz v. Belyew*, 194 F. App'x 897, 898 (11th Cir. 2006) (per curiam). A detailed look into the three principal cases interpreting this so-called "continuous ownership" rule is instructive in guiding the Court's analysis.

First, in *Schilling v. Belcher*, 582 F.2d 995, 999 (5th Cir. 1978), the former Fifth Circuit explained that Federal Rule of Civil Procedure 23.1, which, in part, governs standing in derivative actions, "contains two discrete standing requirements: (1) the plaintiff must have owned stock in the defendant corporation at the time of the transaction of which he complains, the . . . 'contemporaneous ownership' requirement, and (2) the plaintiff must be a shareholder of the defendant corporation at the time suit is brought." Under these requirements, "[o]nly a shareholder, by virtue of his 'proprietary interest in the corporate enterprise'" is permitted to "step into the corporation's shoes and . . . seek in its right the restitution he could not demand in his own." *Id.* (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 321 (1936); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949)). The court noted that "the ownership requirement continues throughout the life of the suit and that the action will abate if the plaintiff ceases to be a shareholder before the litigation ends." *Id.*

Second, in *Timko v. Triarsi*, 898 So. 2d 89 (Fla. 5th DCA 2005), the sole Florida decision addressing this specific issue, the plaintiff, a shareholder of a closely held corporation, commenced a shareholder derivative suit against that corporation. He later initiated a separate proceeding, pursuant to Florida statute, to dissolve the corporation. In response to the dissolution proceeding, one defendant exercised his statutory right to purchase all of the plaintiff's shares. Following that purchase, the trial judge presiding over the derivative suit determined that the plaintiff lacked standing to proceed and granted the defendants' motion to dismiss. On appeal, Florida's Fifth District Court of Appeal looked to Florida's statutory "contemporaneous stock ownership rule," which provides that an individual "***may not*** commence a proceeding in the right of a . . . corporation ***unless*** the person was a shareholder of the corporation when the transaction complained of occurred." Fla. Stat. § 607.07401(1) (emphasis added). Because, the court reasoned, that statute did not create a right of action, it "recognize[d] the pre-existence of [a] common law right." *Timko*,

898 So. 2d at 91. The Florida Legislature's use of the phrase "may not" and the word "unless" reflected its "intent to place additional limits upon this preexisting right to ensure that a plaintiff's stake in the lawsuit is 'legitimate,' meaning an ***ownership*** interest that is not acquired for predatory purposes." *Id.* (emphasis in original). Adoption of the statute did not vitiate "[t]he requirement of some continuous stake in the corporation." *Id.* Based on this, the court held that "a plaintiff in a derivative suit, in addition to meeting the requirements of the statute, must meet the common law requirement of continuous ownership throughout the pendency of the suit." *Id.* Because the plaintiff had lost his shares as a result of one defendant exercising his statutory right to purchase them in response to the plaintiff's dissolution action, he no longer had standing to maintain the derivative suit.

And third, in *Hantz v. Belyew*, 194 F. App'x 897, a federal district court dismissed the plaintiffs' derivative suit for lack of standing after it found that the plaintiffs lost their common stock in the corporation when a bankruptcy court confirmed the corporation's reorganization plan. On appeal, the Eleventh Circuit, in an unpublished opinion, recognized that under both federal and Florida law, a plaintiff bringing a shareholder derivative suit must be a shareholder when the action is brought and throughout the course of the litigation. *Id.* at 898. Because the plaintiffs there no longer owned stock in the corporation, they clearly did not satisfy this requirement. The plaintiffs urged the court to adopt an exception to the continuous ownership rule where the loss of stock was involuntary. In support, they cited several cases from other jurisdictions in which plaintiffs "sought to challenge the propriety of mergers" where a corporation's directors divested them of their stock to "insulate the directors' conduct from judicial review." *Id.* at 899. Based on the facts of the case, the court found it unnecessary "to determine if such an exception exists" or to determine whether it applied to the plaintiffs. *Id.* at 899. Involuntariness alone was insufficient to justify an exception to the rule. Furthermore, the plaintiffs' cited cases turned on redressability,

which was not at issue in *Hantz*, as the bankruptcy proceedings had provided the plaintiffs with a judicial forum in which they could air their grievances.

Considering the above three cases, the Court finds that Siegmund fails to satisfy the continuous ownership rule because he no longer owns Linkwell stock, and a dismissal of this suit for lack of standing is justified. Like the plaintiffs in *Hantz*, Siegmund advocates for the creation or recognition of an exception to the continuous ownership rule in this case.[7] He contends that the boards of Linkwell and LWC approved the merger agreement shortly after Xuelian and Wei were served in this action for the principal purpose of terminating his pending derivative claims to divest this Court of jurisdiction. Siegmund argues that Delaware law recognizes such an exception, *see, e.g.*, *Lewis v. Ward*, 852 A.2d 896, 902 (Del. 2004), and because "Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines," this Court should look to Delaware law to recognize an exception here. [ECF No. 333 at 11] (quoting *Klein v. FPL Grp., Inc.*, No. 02-20170, 2004 WL 302292, at *16 n.27 (S.D. Fla. Feb. 5, 2004)) (internal quotation marks omitted).

Siegmund's argument is unavailing. The U.S. Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law," and this Court is therefore "bound by their constructions except in extreme circumstances" (*e.g.*, where an interpretation of state law "appears to be an 'obvious subterfuge to evade consideration of a federal issue'"). *Mullaney v. Wilbur*, 421 U.S. 684, 691 & n.11 (1975) (quoting *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 129 (1945)). No such subterfuge, obvious or otherwise, is present here. This Court will not contravene or otherwise disturb the only controlling decision of a Florida appellate court ruling on an issue of Florida law by importing and enforcing an exception from Delaware or from any other jurisdiction,

---

[7]   Siegmund improperly frames his argument by foisting onto the Defendants the burden to show that an exception to the continuous ownership rule ***does not*** apply. But considering that there is no exception to the continuous ownership rule under current Florida law, the burden would be on Siegmund to show that such exception exists.

regardless of how often Florida courts have looked to Delaware corporate law for myriad unrelated purposes.

The Court recognizes that the timing of the Linkwell–LWC merger in relation to service of the Third Amended Complaint on certain Defendants in this action is suspect, especially when viewed in the light of Siegmund's allegations that he never received information regarding the merger, the notice of special meeting, the Proxy Statement, or notice of the merger until long after its consummation. That said, the continuous ownership requirement for standing to bring a derivative action, as set forth in *Schilling*, remains the law in this Circuit. Similarly, the Florida Supreme Court has not overruled *Timko*'s recognition of the continuous ownership rule under Florida law; nor has it created any exception to the *Timko* rule. Finally, while the court in *Hantz* discussed a possible exception to this rule, such as the one Siegmund seeks to apply here, it did not create or apply that exception. The other non-binding, factually distinguishable cases Siegmund cites do not persuade.

In the absence of a binding ruling to the contrary from the Eleventh Circuit or a definitive statement of the law from the Florida Supreme Court, this Court is unwilling to create an exception to a well-settled rule. The motion to dismiss for lack of standing shall, accordingly, be granted.[8]

**D.**    ***The Court Need Not Analyze Ecolab's Motion to Sever and Transfer***

Having ruled that Siegmund lacks standing to pursue this action, the Court turns, finally, to Ecolab's motion to sever and transfer. "If . . . a court can readily determine that it lacks juris-diction over the cause . . . , the proper course [is] to dismiss on that ground." *Sinochem Int'l Co.*

---

[8]    Siegmund argues that a recommendation by the Magistrate Judge in March 2015 that the "pre-merger status of Linkwell be preserved"—a recommendation to which Linkwell did not object—forecloses the Defendants' motion. Pl.'s Opp'n at 16. This argument falls flat for two reasons. First, this Court has not adopted the Magistrate Judge's recommendation. Second, and far more importantly, parties cannot create subject matter jurisdiction by agreement or concession, *Sosna v. Iowa*, 419 U.S. 393, 398 (1975), nor can a court create subject matter jurisdiction where it does not otherwise exist, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). *See also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon [the merits] when it has no juris-diction to do so is, by very definition, for a court to act ultra vires.").

*v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007). Because Siegmund does not have standing to bring his derivative action, there is no reason to undergo a full analysis of Ecolab's arguments regarding *forum non conveniens* as it applies (or does not apply) to the forum selection clause in the Stockholders Agreement. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587 (1999) (noting that it is often most efficient to address questions of standing and subject matter jurisdiction prior to a case's merits). Nor should the Court burden a Minnesota court with a sepa-rate derivative action brought against only Ecolab when it has already concluded that subject matter jurisdiction is lacking. As a result, the Court "properly takes the less burdensome course," *Sinochem*, 549 U.S. at 436, in vacating its prior order granting Ecolab's motion to sever and transfer and dismissing the claims against it for lack of standing along with all other claims against all other Defendants.

## III.   CONCLUSION

Despite Siegmund's allegations of foul play vis-à-vis the mid-litigation merger between Linkwell and LWC, which resulted in the cancellation of his Linkwell shares, the fact remains that he is inarguably no longer a Linkwell shareholder. Therefore, under current Florida and federal law, Siegmund no longer has standing to maintain this derivative suit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1)   the Plaintiff's Motion to Strike the Defendants' Motion for Lack of Standing [ECF No. 332] is **DENIED**;

(2)   the Court's Endorsed Order [ECF No. 323], dated September 29, 2015, granting Defendant Ecolab, Inc.'s Motion to Sever and Transfer [ECF No. 207] is **VACATED**; and

(3)   Defendants Xuelian Bian and Wei Guan's Motion to Dismiss for Lack of Standing [ECF No. 325] is **GRANTED**. The Third Amended Verified Shareholders

Derivative Complaint [ECF No. 187] is **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

This action is **CLOSED**, and all pending motions are **DENIED AS MOOT**.[9]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of April, 2016.

_____

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[9]  The Court's Endorsed Order [ECF No. 362], dated March 31, 2016, regarding the Plaintiff's Motion for Determination of Costs and Fees [ECF No. 273] remains in effect.